Case number 21-1729, Southern Iowa, United States v. Emanuel Cowley, Jr. All right, Mr. Westover, we'll hear from you first. Good morning, Your Honors, may I please- Liz Westover, excuse me, I got- It's every time, don't worry. Well, I have you on my screen and I was just looking at the papers and I know who you are, so forgive me. No problem. May it please the court, I represent Defendant Emanuel Cowley. I guess what I was hoping to start out today with was the 704B issue regarding whether or not Sergeant Blomgren's testimony that the defendant intended to distribute as opposed to consume the crack cocaine found in his person violated Rule 704B's prohibition on an expert witness opining as to the ultimate mental state of a defendant when the mental state is an element of the offense. Obviously, it's our position that it does. Now, the government in its response brief characterizes Sergeant Blomgren's testimony as more akin to testimony where a law enforcement officer simply testifies that the facts of this case, of the facts of the case, are consistent with distribution. With respect to counsel for the government, I don't think the transcript can be read that way. First, both the United States Attorney, Assistant United States Attorney, and the witness actually used the word intent. The question was asked in the context of the intent to distribute to someone else, obviously other than the person upon whom the drugs were found. In that context, I think this is about as clear a violation of Rule 704B as you're going to get in these drug expert cases. I also wanted to point out to the court, because I don't know that this came as clearly through in my briefing as I wanted. This is not a minor or semantic distinction. There is a, so to give an example, there is a huge difference between an expert witness testifying, in my training and experience, people who use crack cocaine cannot cobble together enough money to buy this quantity of crack cocaine. In that case, the jury can take the government's expert's opinion for what it's worth, apply to the facts of the case or not, and determine the defendant's intent or lack of intent. I think that's very different than when an expert witness testifies, in my training and experience the defendant had the intent that the crime requires. In the latter case, the witness is not just saying, here's my experience. The witness is saying, I'm the expert, I've done the work for you, right? I am an expert on drug investigations and I think this guy is guilty. I think in that situation, it is incredibly unlikely that you are going to get a jury to make, truly making an independent decision about the defendant's intent. I think that's exactly- Ms. Westovers, is that your argument then on the substantial rights or if we're on the plain error review? Tell me how that works because it seemed to me that while perhaps not the strongest case in the world, there was test evidence of the kind that you've described that is permissible, the type of, the amount of drugs, the lack of paraphernalia, those sorts of things. Tell me, help me understand how this one answer, because as I understand it, it's the one answer from the one question, is so powerful because I'd like to hear a little bit more about that. Sure, Your Honor. First of all, it's that one question and then after that, of course, he goes on for a page to explain, sort of follow up and this is also what leads me to believe that there's an intent. Those sort of questions and answers are less obvious, I think, but the follow up question to the specific one that we quote, the follow up question to the specific one that we quoted, say essentially, and he had a gun, which bolsters my opinion that there was intent here and goes through that sort of list. Again, I think the error here is, this was an essential, this was the only contested element in the defendant's case. It was a central element to the government's case and again, it isn't a semantic difference. This wasn't overwhelming evidence and I understand that on the sufficiency prong, Mr. Cowley, like any other defendant, faces an uphill battle, but under the third prong of Alano, we don't have to establish by a preponderance of the evidence that the result would have been different. We have to establish a reasonable probability and given it is a weak case and 7.6 grams of crack cocaine, while not an inconsequential amount, just isn't enough to give rise to sort of the overwhelming presumption of distribution. I'm thinking about how the jury would have heard this. I'm just wondering, without an objection and without any focus on it, I'm wondering if the jury makes the kinds of distinctions, even given, let's assume for the purposes of this question that it was erroneous, given all of the other questions of this expert about the very same thing, if they really sort of focused in on that one answer. That's sort of where I'm puzzling. No, and I appreciate the question. I really do think it makes a difference that the witness came to the ultimate conclusion, because in order for the jury to convict in that case, they have to say, I think this cop who the court qualified as an expert on drug investigations reached the wrong result, that essentially his expertise is flawed. They don't need to do that if the questions are asked the correct way. If we think that 704B, the purpose is to allow the jury or keep within the province of the jury the question of the defendant's intent, I think it's hard to imagine a more sort of blatant violation of that. I understand that this is a plain error and not a harmless error case, but again, given the relative weakness of the evidence, I think that there is a violation of the defendant's substantial rights that we have reached our burden under the third Alano Prompt. And I would also point out that during closing argument, counsel for the government did mention Sgt. Bloomberg's testimony that Mr. Colley's work was selling cocaine on at least one occasion I see possibly, you know, more than one occasion. So this was a fact that was emphasized at least in closing. I think Bloomberg might be Blomgren, but you did get the- Blomgren. I am so sorry. The sergeant. I'm so sorry. There's another officer in a different case. I apologize. And I see that I'm into my rebuttal time, so any additional questions, I'd like to reserve it if I could. Very well. You may. Thank you for your argument. Thank you. Mr. Ripley, we'll hear from you. Thank you, Your Honor. May it please the court, Will Ripley on behalf of the United States. I think I'll start out pointing out what I think everyone knows, but I keep hearing it. I saw it in the brief and I heard it just now that Sergeant Blomgren testified that the defendant possessed this crack cocaine with the intent to distribute it and that it was intended to go to someone else other than the person upon whom the drugs were found. It's factually inaccurate that that was the testimony. Neither the question pointed directly to Mr. Cowley and the answer did not as well. Someone else in the question and answer refers to someone other than the person who possessed it, not other than the person on whom they were found. And I understand that distinction is fairly, it's not that strong given the location that the bulk of the crack cocaine came from. Counsel, I don't understand the distinction. Would you run through that again for me a minute? Yes, I guess I'm just pointing out that the expert, Your Honor, did not say that this defendant, the defendant, in other words, Mr. Cowley, intended to. What he said was that cocaine, crack cocaine. Well, it was like the cocaine in Exhibits 4 and 3. Was that possessed with the intent to distribute? Right. And obviously the government had linked Exhibits 4 and 3 to the defendant in this case, right? We had. Which is why I understand. So who else would have possessed with intent, I mean, who else was on trial here? Just the one defendant, Your Honor. I understand that. So I don't get the distinction. I mean, maybe I'm, it's the end of the week and I'm running a little low on fumes here, but I mean, what was the implication there? Someone else did it? No. I'm just pointing out that the language used was not specific to Mr. Cowley and the defendant. I understand. Do you think it's okay for the government to ask about this matter as long as the government uses the passive voice and doesn't use the defendant's name? Is that the argument?  I mean, I am just pointing out that that is the way in which the question was asked and answered. All right. Well, we're just trying to understand how that's relevant if the only way to understand the question and answer is whether the defendant possessed it with intent to distribute because he's the only one who possessed it. That's true. And of course, I am sitting before you having asked the question. I tried this case and I frankly would ask a different question. But that's not the question before the court, of course, is whether trial counsel would ask a different question. The question is, was it erroneous? And more importantly, frankly, I think the question is, does this rise to the level of plain error? Did it affect Mr. Cowley's substantial rights? Did it seriously affect the fairness, integrity, and the public reputation of this particular trial? The government's position is no, it did not. As is pointed out in the sufficiency argument, but as well as here in this argument, there were many, many factual pieces to this case. I disagree with counsel's characterization that it was a weak case. Yes, the amount of crack cocaine was slightly over seven and a half grams. And if you look at it just that way, I suppose it could be characterized as a small amount of crack cocaine. However, it was 11 separate packages. And that's quite meaningful. Ten of those packages were each approximately two-tenths of a gram or half of a gram. One of them was in excess of five grams. And so, the possession of this crack cocaine involved both distribution levels, user amounts, and then a bulk quantity, that 5.2 or so grams. It's incredibly meaningful and it's very indicative of distribution. The lack of drug use paraphernalia, whether it be a traditional pipe or any sort of other object fashioned into a pipe, is incredibly meaningful. Of course, we have multiple cell phones here, which is a classic sign of drug distribution. When surrounded by drug possession and these other things, a significant amount of U.S. currency was recovered as well in excess of $1,000. And then there's two pieces I want to point out to the court that I don't think got enough attention in our brief. And that is the video that was recovered from Mr. Cowley's phone, which is essentially an advertisement by Mr. Cowley that he had a whole lot of money, and he had a pistol, and he was open for business. The other thing to point out is... Mr. Ripley, when you said open for business, are you indicating there was something on that video about crack cocaine? No, but not on that video. But there was the pistol displayed alongside all this cash, or excuse me, all this currency. And it's the type of thing that law enforcement sees that is a signal to anyone that's going to see that video that this person, again, I'll use the phrase, is open for business. Of course, the pistol is there to also say, you can buy from me, don't try to steal from me. And so that video was more than just proof of possession of this particular pistol, which was, of course, another contested issue in the case, but it's not really something before the court. Was there, and I'm sorry, I saw the video, but I didn't look for the testimony associated with it, but was there testimony from your drug expert that that's the sort of advertisement type of video they see in these cases, even though there's no drug seen in the video, but that's an open for business kind of ad? No, I'm sorry.  I apologize. No, the expert did not testify about the video. The video was played, again, in part for its probative value on the issue of possession of this particular pistol. It showed some unique characteristics of the pistol that was recovered from the vehicle in which Cali was driving. But it also did, it showed that, and the argument was there, that that is a video generated for that purpose. Otherwise, the video, frankly, is fairly pointless. That was a lot of Facebook videos and kind of pointless. Indeed. The other thing I would point out that was not something that the expert testified about, and so obviously his testimony didn't impact this at all, was from the jailer. This whole incident started as an impaired driving situation. A street detective happened to see it. He was concerned about how close this vehicle was getting to a heavily trafficked highway in the Iowa City area, and so he made the traffic stop, which is atypical for his role in the department at the time. And eventually the stop advanced to where Mr. Cali was being booked into jail for impaired driving offenses. And at that time, the jailer discovered a small, there was one small rock of crack cocaine in Mr. Cali's shoe, along with this significant, you know, thousands of dollars of cash. And at that point then, Mr. Cali was informed because of that recovery, he actually would go through a more thorough search at the jail. Typically impaired drivers booked into jail do not go through a strip search or a full body search, but the recovery of that one rock of crack cocaine and the cash then triggered a further search. And when Mr. Cali learned that from the jailer, his demeanor completely changed. And there was in-depth testimony about that and argument about the meaningful kind of consciousness of guilt of that, how even in Mr. Cali's mind, he knew one rock of crack cocaine was not going to be a big deal because he probably wasn't going to be held accountable for any distribution. But he knew when they found the crack cocaine in his underwear, it was going to be a whole other ballgame because that crack cocaine, the way it's packaged and everything that comes with it, creates then a situation where he's going to be held accountable for the distribution. He knew it. And that testimony, I think, was meaningful in the jury's assessment of what does this mean? When we have this 11 separate rocks of crack cocaine, including one that's over five grams, they could look to Mr. Cali's own perception of what it means. And that's wholly outside of whatever error may have been with the expert. And so whether this was error, obviously, it's for you to decide, Your Honors. But the government's position is it was not plain error. It was harmless. And we'd ask that you uphold his convictions. Thank you very much. All right. Thank you for your argument. Ms. Westover, we'll hear from you in a moment. Ms. Reballo. But only if you turn on your microphone. Sorry, Your Honors. I apologize. Just really quickly. I think that the evidence from the jail about Mr. Cali's change in demeanor when they said he was going to be strip searched, I mean, I think everyone would have a slight change in demeanor if they learned that they were going to be strip searched under almost any circumstance. And I think if you're assuming, well, he must have known how the courts tend to view multiple bags as different from possession, and that that would have been a concern to him. That's an awful lot of speculation in a criminal case on reasonable doubt. In terms of the packaging, I understand what the government is saying. However, two issues. First, if five grams is, as the sergeant testified, an amount that an individual would never purchase for individual use because it was too expensive, and Mr. Cali was selling, why was he carrying it around? And second of all, there was one bag in there that had .06 grams in it. No one's going to buy that. That's less than a quarter of, or about a quarter, I guess, of what a single dose usually contains. That suggests that someone did smoke, presumably Mr. Cali, out of that bag and just kept it. Finally, just a second on the fourth Alana Prahn. I want to point out that I think that this is similar to cases, which this court has found plain error in 702 cases, where a government expert testifies to the credibility of a witness under the guise of medical expertise. I think it's similar because in both cases, the purpose is to protect the independence of the jury to make independent decisions without relying on an expert, and this court has found plain error, as we cited in our brief, on that issue before. And with that, I see that I'm out of my time, so we ask you to reverse the defendant's conviction. What case did you have in mind on that last point? Yes. It is cited in our brief, Walderman. No, that's not it. You cite a case called Waldman. Waldman, which is the defendant where this court said that the defendant didn't intend to kill the police officer. The 702 cases, I'm not seeing in front of me, but I did cite them in the brief. Okay. We'll find them then. I can certainly get the facts. I made the argument in the brief as well. Yeah. There's no need to supplement. If they're in the brief, we'll see them. Thank you both for your arguments. The case is submitted. The court will file a decision in due course.